UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAN VAN VELKINBURGH and the marital community of DAN VAN VELKINBURGH and JANE DOE VAN VELKINBURGH,

Plaintiffs,

v.

DANIEL WULICK, ALLEN MYRON, and their respective marital communities, if any; and the PIERCE COUNTY SHERIFF'S DEPARTMENT,

Defendants.

Case No. C07-5050FDB

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS AND DECLINING TO EXERCISE JURISDICTION OVER STATE CLAIMS

**INTRODUCTION**

This matter arises out of an incident where Sheriff's Deputies responded to calls from the Plaintiff's family saying that Plaintiff Dan Van Velkinburgh was cutting himself and smashing dishes over his head. (Complaint and Answer) Deputies sought to take Van Velkinburgh to the hospital for a mental health assessment. (Complaint) There is a dispute about whether van Velkinburgh was threatening or belligerent toward the Deputies, but he was eventually handcuffed and taken for a mental health assessment. (Complaint)

Plaintiff alleges violations under 42 U.S.C. § 1983 for Fourth Amendment violations of unlawful search, seizure, and unreasonable force. Plaintiff also alleges state claims for negligence, emotional distress, and assault and battery.

ORDER - 1

Defendants move for summary judgment on the following grounds:

1. Plaintiff fails to state a cause of action for unlawful seizure, detention, or search.
   a. Deputies had probable cause to detain Plaintiff because he presented as a danger to himself and caused property damage;
   b. Deputies are exempt from liability because they acted in good faith and without gross negligence;
   c. Deputies could lawfully search Plaintiff within the emergency exception.
2. Deputies used reasonable force to detain the plaintiff.
   a. Quantum of force used was reasonably necessary to ensure Plaintiff's safety;
   b. Government has an important interest in detaining and securing individuals who present as a danger to themselves;
3. Deputies have qualified immunity for Plaintiff's Constitutional claims.
   a. Plaintiff's constitutional rights were not violated;
   b. The law was not clearly established to put the Deputies on notice that their conduct was unlawful;
   c. Deputies could reasonably have believed that their conduct did not violate Plaintiff's constitutional rights.

Finally, Defendants argue that if the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction to hear the state claims. Alternatively, if the Court were to hear the state claims, they should be dismissed for lack of supporting evidence.

Plaintiff moves to strike portions of Officers Myron's and Wulick's declarations as being speculation or an effort to foster sympathy. Plaintiff argues that there is a genuine issue of material fact between his recollection of events and that of the officers. Plaintiff contends that he was not a threat to himself or anyone else. Plaintiff contends that physical force was unnecessary under the

ORDER - 2

circumstances. Finally, Plaintiff's expert, a former Bellevue police chief, opines that there was no justification for "the excessive force" that was used against Plaintiff.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987). "An issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. " *See Aydin Corp. v. Loral Corp.*, 718 F.2d 897 (9th Cir. 1983).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

The following information is taken from the individuals' declarations and referenced exhibits.

On February 2, 2007, Pierce County Sheriff's Deputies, including Defendant Daniel Wulick and Allen Myron, responded to a call from Jane Doe [Annie] Van Velkinburgh reporting that Plaintiff Dan Van Velkinburgh [hereafter Plaintiff] was smashing china on his head and cutting his arms with a knife. Plaintiff left the house on foot before the deputies arrived. Plaintiff states in his Declaration that he was trying to get his kids to stop fighting, and that when the kids would not stop

ORDER - 3

fighting, he left the house to calm down. Plaintiff states that he was not suicidal and has never wanted to kill himself. When Plaintiff returned to the house, his wife told him that the police had come and gone and had left a business card with instructions for Plaintiff to call when he returned. Plaintiff returned the call.

Thereafter, Deputies Wulick and Myron returned to Plaintiffs' house, remained outside, and asked Plaintiff, who was standing in the open doorway, to come outside and talk. The deputies could see cuts on Plaintiff's head and arms. Plaintiff would not come out of the house. Deputy Wulick attempted to talk with Plaintiff to determine whether he wanted any help, but Plaintiff became agitated by the Deputies' presence. Plaintiff then removed his coat and began to empty his pockets. Plaintiff states in his declaration that he was trying to show the deputies the scratch on his arm and that he had no weapons. The Deputies noticed Plaintiff clenching his fists and making targeting glances at them as if posturing for a fight. Plaintiff then stepped quickly toward the Deputies with his hands out and told the Deputies to take him to jail.

The Deputies then grabbed Plaintiff's arms to detain him, but he began to pull away and struggle, so the Deputies took him to the ground. Plaintiff acknowledges that he was taken to the ground, but says one of the deputies put his foot on the back of his neck. The Deputies say that Plaintiff refused requests to put his hands behind his back; Plaintiff acknowledges that he kept his hands under his chest, and told the Deputies that he could not put his hands behind his back because he had a shoulder injury.

The Deputies did not force Plaintiff to release his hands from under his chest because they reasoned it may have resulted in injuries to him. Instead, after several requests of Plaintiff to place his hands behind his back, the Deputies chose to use a Taser, without the penetrating cartridge attached, as they considered it more likely to result in compliance without the risk of injury. When the Deputies used the Taser on the back of Plaintiff's thigh, he released his arms, the Deputies quickly placed handcuffs on him. Plaintiff then began to act irrationally, with his mood moving

ORDER - 4

between being apologetic and furious. Plaintiff said he was slamming his head into china and that he had used a sheetrock knife on his arm because people were hurting him, and he thought this would make it stop.

Plaintiff moves to strike as hearsay several statements attributed to him from the Deputies' accounts of the incident. But Plaintiff's reported statement that he was breaking china on his head and cutting himself with a sheetrock knife because people were hurting him and that he thought this would make it stop qualifies under FRE 801(d)(2) as an admission of a party opponent, and the statements are relevant to Plaintiff's mental state and are admissible as well under FRE 803(3) ("Then existing mental, emotional, or physical condition"). Plaintiff's mental state is a material issue as to whether Plaintiff appeared to be emotionally disturbed to the Deputies and whether he presented a threat to himself or others. Other statements that Plaintiff made to his wife similarly are admissible as to Plaintiff's state of mind. Plaintiff's statement concerning an earlier encounter with Deputy Wulick about police not doing anything when his daughter was raped a couple of weeks ago is admissible to show Plaintiff's state of mind as to the law enforcement officers. Deputy Myron's statement of his own shoulder injury, which manifested itself after the incident with Plaintiff, are his own observations and relate to Plaintiff's resistence to the Deputies efforts. Accordingly, Plaintiffs' motion to strike portions of the Deputies' declarations is denied.

Plaintiff also moves to strike police reports and CAD reports attached to the Deputies' declarations because they are not sworn statements, but this motion is without merit. The reports can be authenticated by the Deputies who have knowledge of the matters stated therein, and the reports are admissible as a public record and/or a business record. FRE 401, 901, and 803(6). Plaintiffs' motion to strike the police and CAD reports is denied.

Plaintiff argues that his arrest was illegal. He contends that he was not a threat to anyone, that he was "extremely cooperative with police to the point of taking off his outer layers of clothing to show them he was unarmed and not a danger to himself or others." (Dan VanVelkinburgh Decl.)

ORDER - 5

Plaintiff asserts that the most menacing act was the angry look and targeting glances that the Deputies describe. Notwithstanding the small cuts, Plaintiff had no weapon and he did call the Deputies back. This demonstrates he was not a suicidal person.

The appropriateness of Plaintiff's detention because the Deputies believed him to be a danger to himself or others is analogous to a criminal arrest and must be supported by probable cause. *See Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991)("Although there are few decisions that discuss the fourth amendment standard in the context of seizure of the mentally ill, all have recognized the proposition that such a seizure is analogous to a criminal arrest and must therefore be supported by probable cause."). The probable cause standard for arrest is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975)(quoting *Beck v. Ohio*, 379 U.S. 89 (1964)).

In this case, Deputies Wulick and Myron had probable cause to detain Plaintiff. Plaintiff's wife called authorities reporting that Plaintiff was cutting himself with a knife and smashing china on his head. There is no evidence that contradicts the fact that she called with this report. The cuts on Plaintiff's head and arm are not disputed. Plaintiff was behaving erratically, and he admitted to the Deputies that he had hurt himself. The Deputies had a reasonable belief that Plaintiff was mentally unstable and a danger to himself.

Plaintiff also argues that physical force in his arrest was not required or appropriate, given that there were two deputies, one Deputy had a Taser, and Plaintiff is small in stature. Plaintiff's expert has opined that the Deputies used force inappropriately too early by physically grabbing Plaintiff rather than using a Taser early in the process to achieve compliance or to handcuff Plaintiff. (Former Bellevue police chief Van Blaricom Decl.) Plaintiff also argues the inappropriateness of handcuffing him from the back after he told the Deputies that he had a shoulder injury.

ORDER - 6

In the Ninth Circuit, one analyzes allegations of excessive force by assessing the quantum of force used and then assessing the government interest that would justify the use of such force. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007). The reasonableness of force used "must be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." *Graham v. Conner*, 490 U.S. 386, 396 (1989). Any determination of reasonableness must "embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

The Deputies saw Plaintiff's cuts on his arms and head, they saw him become agitated, they saw him remove his outer clothing, they saw him clench his fists and give the Deputies "targeting glances" that they determined from their experience to be posturing for a fight. Thus, when Plaintiff moved quickly toward them with his hands out telling Deputies to take him to jail, they grabbed his arms to detain him. Plaintiff, rather than submitting, resisted by struggling and pulling away, whereupon the Deputies took him to the ground. Plaintiff still did not submit despite several requests, and kept his hands under his chest. Rather than wrestle with Plaintiff to get his hands from under his chest, which their experience told them could hold a greater risk of injury, Deputy Wulick then used his Taser on the back of Plaintiff's thigh, and the Deputies were finally able to handcuff him. Accepting Plaintiff's version that a Deputy placed his foot on the back of his neck, Plaintiff's own expert opines that some force was necessary under such circumstances:

> Well trained law enforcement officers are aware that an emotionally distrubed person (EDP), who requires an involuntary mental health evaluation:
> 1) May actively and aggressively resist being taken into custody,
> 2) Often displays exceptional strength that, once engaged, may only be overcome by much greater and possibly injurious force;
> Accordingly and because law enforcement officers do not wish to unnecessarily injure an EDP, deployment of the TASER probes is both a lesser and more effective application of necessary force.

ORDER - 7

(Decl. of D. P. Van Blaricom, p 7 – 8.) Plaintiff's expert opines that the Deputies used the Taser "belatedly," after initiating a physical struggle. *Id.* p. 7. Plaintiff's expert's difference of opinion with the Deputies' use of the Taser under the circumstances is one of degree, and, moreover, if the Deputies had used the Taser against Plaintiff while he was standing, he could have fallen. In assessing the quantum of force used in this case against the factors listed in *Graham* 490 U.S. at 396: severity of the crime; whether the suspect poses an immediate threat to officers or others; and whether a person is actively resisting arrest or attempting to flee, the totality of the circumstances should also be considered, as these factors are not exclusive. *Fikes v. Cleghorn*, 47 F.3d 1011, 1013 –14 (9th Cir. 2005). Under all the circumstances in Plaintiff's case, given that the Deputies were aware of Plaintiff's self-inflicted knife wounds and erratic behavior, the Deputies had an important interest in securing Plaintiff for his own safety and they did secure him without excessive force. There being no genuine dispute as to any material fact, Defendants are entitled to summary judgment.

ACCORDINGLY, IT IS ORDERED:

1. Defendants' Motion for Summary Judgment [Dkt. # 32] is GRANTED and Plaintiffs' federal claims are DISMISSED.

2. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state claims, and they are DISMISSED.

3. The Clerk of the Court shall enter judgment accordingly.

DATED this 14th day of August, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 8